UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRENELL MONSON,<br><br>           Plaintiff,<br><br>      v.<br><br>R. MELKONIAN,<br><br>           Defendant. | Case No. 1:17-cv-00395-EPG (PC)<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>(ECF No. 77) |

## I.    INTRODUCTION

Trenell Monson ("Plaintiff") is a prisoner[1] proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983.  The parties have consented to magistrate judge jurisdiction and this action has been referred to the undersigned "for all purposes within the meaning of 28 U.S.C. § 636(c)."  (ECF No. 40, p. 1).[2]

This action is proceeding against defendant Melkonian on Plaintiff's claim for failure to protect in violation of the Fourteenth Amendment.  (ECF Nos. 10, 11, 12, 24, & 39).

On January 17, 2020, defendant Melkonian filed a motion for summary judgment.  (ECF No. 77).  Plaintiff was granted numerous extensions of time to respond.  (ECF Nos. 81, 88, 91, 97, & 99).  Pursuant to the last of the Court's extensions of time, Plaintiff had until September 14, 2020, to file his opposition to defendant Melkonian's motion.  Plaintiff filed his

---

[1] Plaintiff has alleged that he was a pretrial detainee at the time of the incident alleged in the complaint.
[2] Page numbers refer to the ECF page numbers stamped at the top of the page.

1

1  opposition on September 28, 2020.  (ECF No. 108).

2  For the reasons that follow, the Court will grant defendant Melkonian's motion for
3  summary judgment.

4  **II.     BACKGROUND**

5  a. <u>Summary of Plaintiff's Second Amended Complaint</u>

6  Plaintiff is a pretrial detainee who is being held at Fresno County Jail.

7  On November 21, 2016, at or around 1400 hours, he and his cellmate were returning to
8  their assigned housing at A-Pod (segregated housing) from recreation time on the roof.  As they
9  exited the elevator, they were escorted by defendant Unknown Officer 1, who was working the
10 floor.  Defendant Unknown Officer 1 gave a hand signal to Unknown Officer 2, who was
11 working the control tower.

12 As they entered the sally port door, Plaintiff noticed that the door to B-Pod (general
13 population) was left open.  About fifteen to twenty Mexican inmates from B-Pod ran out and
14 attacked Plaintiff and his cell mate.  During the attack defendant Unknown Officer 1 ordered
15 everyone to get down, and started macing those who didn't comply (which was how the attack
16 was stopped).

17 Plaintiff's cell mate needed immediate medical attention due to his obvious physical
18 injury.  Plaintiff was denied medical attention after being checked for physical marks.  Plaintiff
19 complained about his wrist hurting, but was not taken for medical attention. Instead, he was
20 placed back in his cell.

21 Plaintiff suffered physical injury to his wrist, as well as mental and emotional distress.

22 Plaintiff alleges that defendants Unknown Officer 1 and Unknown Officer 2 knew the
23 danger of leaving a door open to a general population module while escorting inmates from
24 segregated housing.  Plaintiff alleges that defendants Unknown Officer 1 and Unknown Officer
25 2 were aware that inmates are placed in segregated housing when they pose "a threat to or from
26 other inmates or the jail facility.  A-pod have a label of housing snitches, drop outs and gays
27 etc…."

28 Plaintiff alleges that defendants Unknown Officer 1 and Unknown Officer 2 failed to

check the doors as required.  Plaintiff alleges that this was an intentional act by defendant Unknown Officer 2 because if any door is left open, there is a light in the tower that comes on to let officers know which door(s) are open.

Plaintiff does not know who left the door open.

    b. <u>Screening</u>

On November 17, 2017, the Court screened Plaintiff's complaint and allowed this case to proceed "against defendants Unknown Officer 1 and Unknown Officer 2 on Plaintiff's claim for failure to protect in violation of the Fourteenth Amendment." (ECF No. 12, p. 2).  The Court also dismissed all other claims and defendants.  (<u>Id.</u>).[3]

    c.   <u>Substitution of Defendants and Dismissal of Defendant Martinez</u>

On November 21, 2017, the Court opened discovery "for the limited purpose of identifying and getting a service address for defendants Unknown Officer 1 and Unknown Officer 2." (ECF No. 13, p. 1).  On May 25, 2018, Plaintiff filed a motion for a subpoena. (ECF No. 18).  Plaintiff's motion was granted (ECF No. 20), and a subpoena was issued to Fresno County Sheriff's Office for documents containing the names and addresses of the two Doe defendants (ECF No. 22).  "Fresno County Sheriff's Office responded by providing the Court with the names of the two officers it believes fit Plaintiff's description" (ECF No. 24, p, 2), and the Court substituted R. Melkonian and M. Martinez into the case in place of the Doe defendants (<u>id.</u>).

Defendant Melkonian waived service of the summons, and appeared.  (ECF Nos. 27 & 28).

On July 24, 2018, the summons for defendant Martinez was returned unexecuted.  (ECF No. 26).  According to the United States Marshal, Fresno County notified the Marshal that defendant Martinez has been deployed with the military.  (<u>Id.</u>).  A return date was not known, and no forwarding information was provided.  (<u>Id.</u>).  The agent serving process indicted that he

---

[3] Judge Anthony W. Ishii was the district judge originally assigned to the case.  (ECF No. 5).  On March 2, 2018, the case was reassigned to District Judge Lawrence J. O'Neill.  (ECF No. 14).  On October 24, 2018, this action was referred to the undersigned "for all purposes within the meaning of 28 U.S.C. § 636(c)."  (ECF No. 40, p. 1).

1 or she was unable to locate defendant Martinez.  (Id.).

2      Several months passed after service was returned unexecuted, and Plaintiff did not provide another address for defendant Martinez or request the issuance of a third party subpoena so that he could attempt to find defendant Martinez's current address.  Accordingly, the Court issued findings and recommendations, recommending "that defendant Martinez be dismissed from this action because of Plaintiff's failure to provide the Marshal with accurate and sufficient information to effect service of the summons and complaint on defendant Martinez within the time period prescribed by Federal Rule of Civil Procedure 4(m)."  (ECF No. 31, p. 4).

     Plaintiff objected (ECF No. 34), but on October 22, 2018, Plaintiff's objections were overruled and defendant Martinez was "dismissed from this action, without prejudice, because of Plaintiff's failure to provide the Marshal with accurate and sufficient information to effect service of the summons and complaint on defendant Martinez within the time period prescribed by Federal Rule of Civil Procedure 4(m)" (ECF No. 39, pgs. 2-3).

### III.     DEFENDANT MELKONIAN'S MOTION FOR SUMMARY JUDGMENT

     Defendant Melkonian ("Defendant") argues that he is entitled to summary judgment on two grounds: 1) Plaintiff failed to exhaust his available administrative remedies, and 2) Defendant did not violate Plaintiff's Fourteenth Amendment rights.  (ECF No. 77, p. 2).

     Because the Court is holding that Defendant is entitled to summary judgment because Defendant did not violate Plaintiff's Fourteenth Amendment rights, the Court will not address Defendant's alternative argument that he is entitled to summary judgment because Plaintiff failed to exhaust his available administrative remedies.

     As to Defendant's argument that Defendant did not violate Plaintiff's Fourteenth Amendment rights, Defendant argues that "the undisputed fact[s] establish that he did not make any decision, let alone an intentional decision, with regard to the movement of the plaintiff at any time on the day of the subject incident which gives rise to this litigation.  The undisputed facts are that, on the day of the subject incident, Melkonian had no knowledge of the alleged conditions, and no reason to believe that such alleged conditions existed, which plaintiff claims

4

violated his Fourteenth Amendment rights.  Once he learned of the 'condition' of which plaintiff complains, Melkonian took reasonable measures to abate the risk of harm." (ECF No. 77-1, p. 5).

"According to plaintiff's second amended complaint, on November 21, 2016, while he and his cell mate were being escorted from recreation time back to their assigned housing in A Pod, segregated housing, correctional officers intentionally left a door open to general population (B Pod), exposing the plaintiff to attack by other inmates." (Id.).

However, "[a]t the time of the subject incident, Melkonian was not the correctional officer who escorted the plaintiff and his cell mate back to their housing; and Melkonian was not the correctional officer assigned to the security tower.  At the time of the altercation on which the plaintiff complains, Melkonian was on the fourth floor in F Pod, on the opposite side of the security tower, with jail maintenance.  Upon hearing the radio transmission of the altercation, Melkonian ran to the scene and assisted in stopping the altercation by deploying his OC spray into the group of fighting inmates." (Id. at 5-6).

"The undisputed facts are that Melkonian did not have any knowledge or reason to believe that the door to general population was open.  The undisputed facts are that on those occasions when Melkonian inspected the door to B-Pod, it was closed and secure.  The undisputed facts are that on November 21, 2016, Melkonian was not involved in escorting the plaintiff back to his cell in segregated housing.  The undisputed facts are that, contrary to the allegations in plaintiff's second amended complaint, Melkonian acted swiftly to restore order back to the fourth floor of the jail.  He acted swiftly to protect the plaintiff and others present on the fourth floor on November 21, 2016.  The undisputed facts are that Melkonian took swift, reasonable measures to abate the risk of harm to the plaintiff and others present on the fourth floor on November 21, 2016." (Id. at 6).

In support of his motion, Defendant submits his own declaration, as well as the declaration of Lieutenant Michael Porter.  Defendant also submits the Crime Report and two Incident Detail reports related to the incident alleged in the complaint, and portions of the transcript of the deposition of Plaintiff.

### IV. PLAINTIFF'S OPPOSITION[4]

Plaintiff bases his opposition on Defendant's own motion for summary judgment. (ECF No. 108, p. 2). Defendant states that he was a floor officer, and that his duties included conducting security checks, conducting head counts, and generally walking the floors to which he was assigned to make sure that inmates are safe and secure. (Id.). Defendant failed to protect Plaintiff by leaving the door open to B Pod. (Id.). Additionally, Defendant's job was to do hourly walks for counts and safety measures. (Id.). However, Defendant did not do his walks at 12:15 and 1:15, as required. (Id.). Had Defendant done these walks and secured the door to B Pod, which was his job duty, the attack on Plaintiff could have been avoided, or at least the chances could have been minimized. (Id. at 3). Instead of performing his duties, Defendant was with jail maintenance staff in F Pod. (Id.).

"This all supports plaintiff['s] claim, that defendant acted intentionally, by avoiding b-pod, knowing the door was left open, defendant even went out of his way to be with jail maintenance to avoid doing his security walk so this attack can happen to plaintiff." (Id.).

In support of his opposition, Plaintiff provides his own declaration, Defendant's responses to his request for admissions, grievance forms, and a response to a grievance.

### V. UNDISPUTED FACTS

The Court finds that the following facts are undisputed. "As it pertains to the fourth floor of the main jail, where the plaintiff was assigned at all times relevant to this litigation, inmates are assigned to Pods A, B, C, D, E, or F or FF cells. Pods A, B and C are on one side of the security tower and Pods D, E and F are on the opposite side of the security tower." Defendant's Separate Statement of Undisputed Material Facts ("UMF") 36. "At all times relevant to the subject lawsuit, the plaintiff was housed in A Pod which is administrative segregation. A Pod consists of individual cells in which persons will be housed either singularly or with another individual." UMF 37.

"On November 21, 2016, Melkonian was working in the Fresno County main jail and

---

[4] The Court is considering Plaintiff's opposition even though it was not timely filed.

6

was assigned to the fourth floor as a floor officer." UMF 39. "Melkonian conducted visual security checks of B Pod at 10:16 a.m., and 11[:]35 a.m. During his inspections of B Pod, the door into the Pod was closed and secure." UMF 43.[5]

"At no time did Melkonian leave the door to B Pod unsecured or unlatched." UMF 44. "At no time during his shift on November 21, 2016, did Melkonian ever notice or suspect that the security door for Pod B was open or ajar." UMF 45.

"On November 21, 2016, at 1:15 p.m., approximately fifteen minutes prior to the occurrence of the subject incident, Melkonian was conducting a security check of F Pod. F Pod is on the opposite side of the jail from where A and B Pods are located." UMF 46.

"At the time of the subject incident, Melkonian was in F Pod with jail maintenance staff when he heard a call come over his hand held radio from another officer. The officer was calling for additional officers to respond to his location on the fourth floor." UMF 47. "Upon hearing the call, Melkonian immediately left where he was in F pod and ran over to the sally port area between A and B pods." UMF 48.

"Upon his arrival at the scene, Melkonian observed multiple inmates in an altercation. He immediately pulled out his Fresno County Sheriff's Department issued MK-3 Oleoresin Capsicum (OC) canister and instructed all inmates to get on the ground." UMF 49. "As none of the inmates responded by heeding his command, Melkonian proceeded to deploy his OC canister from a distance of approximately seven or eight feet at a group of inmates fighting." UMF 50.

## VI. LEGAL STANDARDS

### a. Legal Standards for Summary Judgment

Summary judgment in favor of a party is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Albino v. Baca ("Albino II"), 747 F.3d 1162, 1169 (9th Cir. 2014) (*en banc*) ("If there is a genuine dispute about material facts, summary judgment will not be granted."). A party

---

[5] Plaintiff alleges that Defendant was responsible for leaving the door to B Pod open, but did not provide any evidence in support of this assertion.

asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials, or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1).

A party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  If the moving party moves for summary judgment on the basis that a material fact lacks any proof, the Court must determine whether a fair-minded jury could reasonably find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986) ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322.  Additionally, "[a] summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

In reviewing the evidence at the summary judgment stage, the Court "must draw all reasonable inferences in the light most favorable to the nonmoving party." Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011).  It need only draw inferences, however, where there is "evidence in the record … from which a reasonable inference … may be drawn…"; the court need not entertain inferences that are unsupported by fact. Celotex, 477 U.S. at 330 n. 2 (citation omitted).  Additionally, "[t]he evidence of the non-movant is to be believed…." Anderson, 477 U.S. at 255.

\\\

b. <u>Legal Standards for Failure to Protect</u>

The Ninth Circuit has set forth the following guidance regarding claims for failure to protect by pretrial detainees under the Fourteenth Amendment:

> [T]he elements of a pretrial detainee's Fourteenth Amendment failure-to-protect claim against an individual officer are:
>
> (1) The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;
>
> (2) Those conditions put the plaintiff at substantial risk of suffering serious harm;
>
> (3) The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4) By not taking such measures, the defendant caused the plaintiff's injuries.
>
> With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn[] on the facts and circumstances of each particular case.

<u>Castro v. County of Los Angeles</u>, 833 F.3d 1060, 1071 (9th Cir. 2016) (alteration in original) (footnote, citation, and internal quotation marks omitted).

c. <u>Personal Participation Requirement</u>

A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" <u>Preschooler II v. Clark Cnty. Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)). A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676-77 (2009). In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. See <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 691, 695 (1978).

\\\

## VII. DISCUSSION

### a. Analysis

Based on the undisputed facts, Defendant did not fail to protect Plaintiff in violation of the Fourteenth Amendment.

Plaintiff alleges that Defendant was responsible for leaving the door to B Pod open. However, Plaintiff provided no evidence to support this assertion. Based on the undisputed facts, during Defendant's inspections of B Pod, the door into the Pod was closed and secure. At the time of the incident, Defendant was in F Pod. Defendant did not leave the door to B Pod open, nor did he have a reason to suspect that it was left open. Upon hearing that there was an incident, Defendant immediately left F Pod and ran to assist. There is no evidence suggesting that Defendant left the door to B Pod open.

Plaintiff also alleges that Defendant failed to conduct security checks at 12:15 and 1:15, and that had he done so, the attack on Plaintiff could have been avoided (or at least the chances could have been minimized). However, Plaintiff submitted no evidence suggesting that it was Defendant's responsibility to conduct security checks of the relevant area at 12:15 p.m. and 1:15 p.m. Moreover, even if it was Defendant's responsibility to conduct such checks, and even if Defendant's failure to conduct the checks caused Plaintiff's injury, Plaintiff has not provided any evidence that Defendant made an *intentional* decision with respect to the conditions under which Plaintiff was confined. At most there is evidence that Defendant negligently failed to conduct the checks, and negligence alone is not sufficient. Castro, 833 F.3d at 1071 ("[T]he test to be applied under *Kingsley* must require a pretrial detainee who asserts a due process claim for failure to protect to prove more than negligence but less than subjective intent—something akin to reckless disregard.").

As there is no evidence on which a jury could reasonably find that Defendant made an intentional decision with respect to the conditions under which Plaintiff was confined that put plaintiff at substantial risk of suffering serious harm. Defendant is thus entitled to summary

judgment on Plaintiff's failure to protect clam.[6]

## VIII.   ORDER

Based on the foregoing, IT IS HEREBY ORDERED THAT:

1. Defendant Melkonian's motion for summary (ECF No. 77) is GRANTED;
2. Judgment is entered in favor of defendant Melkoninan; and
3. The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated:   **September 29, 2020**          /s/ Erica P. Grosjean
                                                                 UNITED STATES MAGISTRATE JUDGE

---

[6] While summary judgment is clearly warranted as to Defendant based on the undisputed facts, it is worth noting that it was Fresno County Sheriff's Office that provided Plaintiff with Defendant's name in response to a subpoena to identify Doe defendants.  That subpoena requested documents containing the names and addresses of the two Doe defendants. (ECF No. 22). "Fresno County Sheriff's Office responded by providing the Court with the names of the two officers it believes fit Plaintiff's description." (ECF No. 24, p, 2). The Court recognizes that Plaintiff had previously alleged that Unknown Officer 1 ordered everyone to get down and used pepper spray on Plaintiff, and that it appears Defendant Melkonian fits this description.  Nevertheless, for Defendant to move now, almost a year and a half after being served, for summary judgment on the basis that he was not involved in the critical event underlying Plaintiff's claim, is somewhat troubling.
    Nevertheless, the Court finds that summary judgment is appropriate and that this case should be dismissed in full. Fresno County Sheriff's Office identified another individual in response to the subpoena, M. Martinez, who was dismissed without prejudice after Plaintiff failed to provide the Marshal with accurate and sufficient information to effect service of the summons and complaint on defendant Martinez within the time period prescribed by Federal Rule of Civil Procedure 4(m).  It is possible that M. Martinez was more centrally involved in the underlying incident.  Additionally, discovery opened over a year and a half ago, and Plaintiff has been given ample opportunity to gather discovery on all individuals involved in the incident and to file a motion to amend or substitute.